Jacob Markowitz, J.
Motion by defendant pursuant to subdivision 4 of rule 106 of the Buies of Civil Practice to dismiss complaint for insufficiency and for judgment pursuant to rules 112 and 113 of the Buies of Civil Practice. Plaintiffs, by cross motion, seek judgment pursuant to rules 112 and 113 of the Buies of Civil Practice.
The complaint under attack seeks a declaratory judgment to the effect that section 108 of the Civil Service Law (Condon-Wadlin Act), insofar as it affects plaintiffs’ proposed course of conduct hereinafter set forth, is unconstitutional. By leave of the court, briefs as amici curice have been filed by the New *946 York Civil Liberties Union and the Nassau Classroom Teachers Association.
The action is brought by 31 individuals, comprising the officers and executive board of the Secondary School Teachers Association of New York, Inc. They sue individually and on behalf of all its members as well as for “ all others similarly situated”. An additional plaintiff is the Secondary School Teachers Association, Inc., itself.
The complaint alleges that the individual plaintiffs are teachers employed by defendant and that they have “ resolved ” to go to Albany on or about February 9, 1961, accompanied by as many teachers as may wish to join them and to remain for as long as may be necessary, in order to consult with and petition members of the Legislature and the executive departments of the State of New York as to 14 specified proposals on their part, aimed inter alia, at improving their working conditions, increasing their salary, and reducing or eliminating their pension contributions. They further allege that they have resolved to visit, consult with and petition, at the same time, the members of the Board of Estimate of the City of New York, the members of the Board of Education, and civic leaders and public officials in the Cities of Albany and New York for the purpose of seeking ways and means to improve instruction and correct “ unreasonable substandards ” in the secondary school program.
Plaintiffs further allege that the resulting absences from their teaching and other positions come within the literal prohibition of the Condon-Wadlin Act, and that unless said act is declared unconstitutional, their absences for some or all the purposes specified in the complaint may result in the forfeiture of their positions, pursuant to the language of the act. They aver that without a declaratory judgment (1) as to the constitutionality of the act and (2) as to which, if any, of the purposes enumerated are not for purposes proscribed by the act, it is impossible for them to know whether or not their planned absences would result in the loss of their positions. They, accordingly, seek a declaratory judgment that the act is unconstitutional if applied to their contemplated absences for the purposes specified and that the act does not apply, in any event, to such absences.
Defendant contends that the complaint should be dismissed on the ground that it does not present a justiciable controversy and, further, that in any event, the court in the exercise of its discretion ought to decline to pronounce a declaratory judgment.
While the general rule is to the effect that in the absence of a genuine justiciable controversy, courts do not make hypothetical adjudications (Prashher v. United States Guar. Co., *947 1 N Y 2d 584), the application of this rule can only be determined by the factual circumstances existing in an individual case. Plaintiffs, as public employees encompassed within the Condon-Wadlin Act, are hesitant to absent themselves from their employment for the heretofore-mentioned purposes for fear that if the act prohibits their absence for the avowed purposes they will automatically forfeit their employment. They, therefore, wish to obtain a declaratory judgment as to the legality of the act and as to which, if any, of their purposes would violate the act, so that they may know in advance to what extent, if any, they may carry out their planned absences without thereby terminating their employment. Declaratory judgments are intended as a guide to future action (Lynch v. Bailey, 279 App. Div. 650), and have been pronounced in situations not too dissimilar to the one here presented (Ivory v. Edwards, 278 App. Div. 359, affd. 304 N. Y. 949; Socony-Vacuum Oil Co. v. City of New York, 247 App. Div. 163, affd. 272 N. Y. 668; Dun & Bradstreet v. City of New York, 276 N. Y. 198). The need for a declaratory judgment in these, cases arose by virtue of the fact that if plaintiff could not test the validity of a statute until after he had already violated it, he would be subject to severe penalties in the event that an ultimate judgment upheld the validity of the statute.
The plaintiffs here are in just such a situation, because, unless they can obtain a declaratory judgment in advance, they run the risk of forfeiting their positions if an attack upon the validity or application of the act after their dismissal should result in a determination that the act is valid and applies to the plaintiffs’ absences.
In the court’s opinion, a proper ease for pronouncing declaratory judgment is presented here as to the individual named plaintiffs. They are entitled to know in advance of their definitely planned absences, for specifically detailed purposes, whether or not carrying out of their plans would cost them their positions in the public service. Furthermore, the court feels that a declaratory judgment as to the rights of plaintiffs is desirable in the public interest, because of the fact that doubts as to the constitutionality of the act, in at least some respects, appear to be widespread and because the infrequent resort to the act by public officials seems to have been due, in part at least, to such doubts as to the validity and enforcibility of the act.
Defendant urges that declaratory judgment should not be pronounced in this action because plaintiffs’ proposed absences would violate the by-laws of the Board of .Education and subject them to disciplinary action at the hands of the board. *948 Although the fact that the proposed absences would subject plaintiffs to disciplinary action for violation of the by-laws does not commend plaintiffs’ proposed conduct to the court, it does not appear to be sufficient to deprive them of their right to a declaratory judgment on the theory of “ a lack of equity ’ ’, urged by defendant.
Although the named individual plaintiffs may maintain this action, a different conclusion is necessary as to the “ others similarly situated ”, on whose behalf said plaintiffs purport to sue, and as to plaintiff, Secondary School Teachers Association, Inc. The complaint alleges that said named plaintiffs “ will advise and urge ” the other members of the secondary school staff to absent themselves for the same purposes, but there is nothing to indicate that any of the others plan to do so, and the situation, as to them, is too hypothetical to form the basis of a declaratory judgment. The corporate plaintiff is in no way affected by the Condon-W adlin Act and, not being an aggrieved or affected party, has no legal standing to obtain a declaratory judgment as to its validity or application.
We turn now to the question raised as to the constitutionality of the Condon-W adlin Act, and to the question as to which of the matters proposed to be taken up by plaintiffs with legislators, public officials and others would constitute violations of that statute.
A proper understanding of the points made by plaintiffs would be greatly aided by quoting the pertinent provisions of the Condon-W adlin Act:
“ § 108. Strikes by public employees prohibited; penalties.
“ 1. ‘ Strike ’ defined. As used in this section the word' ‘ strike ’ shall mean the failure to report for duty, the wilful absence from one’s position, the stoppage of work, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment, for the purpose of inducing, influencing or coercing a change in the conditions or compensation, or the rights, privileges or obligations of employment ; provided, however, that nothing contained in this section shall be construed to limit, impair or affect the right of any public employee to the expression or communication of a view, grievance, complaint or opinion on any matter related to the conditions or compensation of public employment or their betterment, so long as the same is not designed to and does not interfere with the full, faithful and proper performance of the duties of employment*.
“ 2. Prohibition against strikes. No person holding a position by appointment or employment in the government of the *949 state of New York, or in the government of the several cities, counties, towns or villages thereof, or any other political or civil division of the state, or of a municipality, or in the public school service, or in any public or special district, or in the service of any authority, commission, or board, or in any other branch of the public service, hereinafter called ‘ public employee ’, shall strike.
“ 3. Prohibition against consent to strike. No person exercising any authority, supervision or direction over any public employee shall have the power to authorize, approve or consent to a strike by one or more public employees, and such person shall not authorize, approve or consent to such strike.
“ 4. Termination of employment. Notwithstanding any other provision of law, any public employee who violates the provisions of this section shall thereby abandon and terminate his appointment or employment and shall no longer hold such position, or be entitled to any of the rights or emoluments thereof, except if appointed or reappointed as hereinafter provided # * *
“ 6. Determination of violation. Notwithstanding the provisions of any other law, any person holding such a position who, without the lawful approval of his superior, fails to report for duty or otherwise absents himself from his position, or abstains in whole or in part from the full, faithful and proper performance of his position shall be deemed on strike; provided, however, that such person, upon request, shall be entitled, as hereinafter provided, to establish that he did not violate the provisions of this section. Such request must be filed in writing with the officer or body having power to remove such employee, within ten days after regular compensation of such employee has ceased. In the event of such request, such officer or body shall within ten days commence a proceeding for the determination of whether the provisions of this section have been violated by such public employee, in accordance with the law and regulations appropriate to a proceeding to remove such public employee. Such proceeding shall be undertaken without unnecessary delay.” (L. 1958, ch. 790, eff. April 1, 1959.)
The constitutionality of the act’s prohibition of a strike by public employees has already been upheld by Mr. Justice Lupiano in New York City Tr. Auth. v. Loos (2 Misc 2d 733). In the course of his able opinion, he said (p. 740): “ Defendants • argue that the act is unconstitutional but I cannot agree, and I do not believe that this argument will find acceptance if directed. against this statute as a whole (cf. Detroit v. Division 26 of *950 Amalgamated Assn., 332 Mich. 237; see, also, Butler v. Monaghan, 200 Misc. 327; indeed, an assumption of constitutionality appears to be implicit in Matter of Durkin v. Cheek, 283 App. Div. 683). Read broadly, the Condon-Wadlin Act is an embodiment of views long held by executive and judicial branches of government, both State and Federal, and is compatible with the inherent sovereign power delegated to the Legislature to prevent strikes by public employees which would interfere with the regularity and continuity of governmental functions * * *. I
cannot say that the implication deriving from the statute that it is against public policy for public employees to strike, and the provisions thereof prohibiting such strikes, are unconstitutional insofar as these rapid transit motormen are concerned, any more than they would be unconstitutional in relation to the police force and to firemen.”
This court might add that the difference between the right of members of the Army to strike and that of other types of public employees performing essential services, without which the safety, health and welfare of the public could be seriously impaired and the functions of government paralyzed, is only one of degree.
No attack upon the Legislature’s right to prohibit strikes of public employees is made by the present plaintiffs. They content themselves with an assault upon the constitutionality of the statute on other grounds, viz.: (1) that it provides for forfeiture of public employment without a hearing; (2) that the act is too vague and indefinite in its definition of the word ‘ ‘ strike ’ ’ and in its provisions for its enforcement; (3) that the act deprives plaintiffs of their constitutional right to petition the Legislature; and (4) that the statutory presumption that any employee’s absence from duty without the lawful approval of his superior or his abstention from the full performance of his duties, shall be deemed a “ strike ” (notwithstanding that such presumption is rebuttable by the employee) is unconstitutional. Plaintiffs correctly point out that none of these questions was raised in New York City Tr. Auth. v. Loos (supra), and that the court in that case expressly said (p. 740): “ It may be that as to certain of its applications in specific situations, strict and literal enforcement of some provisions of the Condon-Wadlin Act may have consequences which courts may find to be unreasonable or a deprivation of due process and hence unconstitutional. But with these possibilities, if and when they arise and with whatever impact they may have on some provisions of the act, I cannot now concern myself.” These contentions of plaintiff *951 will be taken up in the order in which they have previously been referred to.
The claim that the act is unconstitutional because it provides for forfeiture of positions in the public service without a full and fair hearing is, in the court’s opinion, based upon a false premise. It is quite true that subdivision 4 of section 108 of the Civil Service Law provides that a strike by a public employee automatically terminates his employment and the rights and emoluments thereof. This provision must, however, be read in conjunction with the other provisions of the act, particularly subdivision 6. Subdivision 6 expressly authorizes any public employee, within 10 days after his regular compensation has ceased, to request a hearing from the officer or body having power to remove him, in which even such officer or body ‘1 shall ’ ’ within 10 days thereafter commence a proceeding to determine whether or not the employee had been guilty of a strike in violation of the law. Although the act does not expressly so state, a determination that the employee had not violated the act would entitle him to his compensation retroactively to the date it ceased. Thus the temporary stoppage of his compensation, without prejudice to its repayment if he is later found not guilty of a strike, is actually no more than a suspension pending a hearing. The right to suspend a public employee, pending the hearing and determination of charges against him, is well established and does not violate constitutional rights of the employee, since an ultimate determination in his favor entitles him to any back pay he lost by virtue of the suspension. Bead as a whole, the Condon-Wadlin Act does not discharge public employees without a hearing. The automatic discharge provided for in subdivision 4 is purely theoretical. Employees’ positions and rights are not actually interfered with until and unless their compensation is terminated by the proper authorities, and, when that occurs, they have the right to an expeditious hearing at which they may establish that they did not “strike”, in which event they continue to receive compensation and retain their positions, and, in addition receive payment of compensation theretofore withheld. Adler v. Board of Educ. (342 U. S. 485) dealt with the constitutionality of section 12-a of the former Civil Service Law, as supplemented by the Feinberg Law and rules and regulations adopted by the Board of Regents. Section 12-a was similar to the Condon-Wadlin Act in that it provided for dismissal, without a hearing, with the right to a person dismissed to apply for a hearing within four months of his dismissal. The statute was held constitutional. The only discussion by the *952 Supreme Court of the right to a hearing related to the right of the Board of Begents, without a hearing, to list organizations as subversive and thus create a presumption that every member of such organizations was a subversive and disqualified to remain in the public service. The court did not find that the provision for dismissal, with the right to reinstatement after a hearing, violated due process. It upheld the constitutionality of the statutes and regulations.
The contention that the definition of the word “strike”, contained in subdivision 1 of the act, is so vague and indefinite as to render the act unconstitutional seems to the court to be without merit. In the court’s opinion, the definition is as clear and definite as any definition can reasonably be. No definition can be so detailed as to cover every situation which may conceivably arise in the future, There are always bound to be borderline situations requiring a determination as to whether they are or are not within a statutory definition. This does not, in itself, render a statute unconstitutional. Otherwise there would probably be few, if any, constitutional statutes.
The claim that the enforcement provisions of the act are also so vague and indefinite as to invalidate the act is likewise without merit. On the contrary, the enforcement provisions appear to the court to be clear and definite.
Plaintiffs further contend that the Condon-Wadlin Act deprives them of their constitutional rights of free speech, assembly, and the right to petition the Legislature. All that the act does, however, is to provide that they may not absent themselves from their public positions for the purpose of exercising those rights and in an 'effort to change the conditions or the compensation or the rights, privileges, or obligations of their employment, without forfeiting their positions. ' The act itself also provides that it shall not be construed “ to limit, impair or affect the right of any public employee to the expression or communication of a view, grievance, complaint or opinion on any matter related to the conditions or compensation of public employment or their betterment, so long as the same is not designed to and does not interfere with the full, faithful and proper performance of the duties of employment ” (subd. 1; italics supplied).
What the plaintiffs are asking is a judicial declaration that they and all the members of the secondary school staff who may wish to join them are constitutionally entitled, without loss of their public positions, to be absent, en masse from their employment on February 9, 1961, and for as long thereafter “ as may be necessary to accomplish their purposes ”, thus paralyzing *953 the secondary schools for an indefinite period of time. Plaintiffs ’ contention is well answered by the United States Supreme Court in Adler v. Board of Educ. (342 U. S. 485, supra) where the right of free speech and assembly was asserted (p. 492): “ It is clear that such persons have the right under our law to assemble, speak, think and believe as they will. Communications Assn. v. Douds, 339 U. S. 382. It is equally clear that they have no right to work for the State in the school system on their own terms. United Public Workers v. Mitchell, 330 U. S. 75. They may work for the school system upon the reasonable terms laid down by the proper authorities of New York. If they do not choose to work on such terms, they are at liberty to retain their beliefs and associations and go elsewhere. Has the State thus deprived them of any right of free speech and assembly? We think not.”
Plaintiffs urge that their right to petition the State Legislature during nonemployment hours is of little value because the legislative and school sessions coincide in time with their school sessions. This is not, however, entirely true, for the legislative committees and officials they wish to consult often meet at times and places which would not conflict with school hours, and sessions of the State and city legislative bodies likewise are often held at times which would present no such conflict. In the case of contemplated absences for the purpose of consulting with members of the Board of Estimate and of the Board of Education and other persons and officials, there is even less need for absences from duty than where visits to Albany are involved. The court does not mean to imply, however, that it is undesirable that public employees be entitled to reasonable opportunity to appear before legislative bodies and public officials during working hours, not en masse, but by selected representatives from among their number and groups, to urge improvements in their working conditions, compensation, etc. Representation by outsiders, who are not employed in the secondary schools and who cannot, therefore, be as familiar with the problems of the secondary school staff as members of the staff would be, cannot be deemed a satisfactory substitute for appearances before the proper authorities of members of the staff themselves. (It is not suggested, however, that representation be exclusively limited to public employees.)
The present by-laws of the Board of Education expressly permit absences under certain circumstances with the permission of the Superintendent of Schools; and the affidavit of Charles Silver, the president of the board, states that the Superintendent has granted leaves to specified persons for reasonable *954 periods of time for certain purposes. However, the power to sanction such absences is insufficiently broad to excuse, en masse, all employees who desire to absent themselves for the purposes stated in the complaint for, unquestionably, such wholesale absence would in effect be a strike of a nature prohibited by the act.
Closely intertwined with the seeking of an improvement in plaintiffs ’ working conditions are matters which strive to better the school system itself. Practically all solutions for the betterment of the school system improve conditions of employment. The converse is also true, that improved conditions of employment undoubtedly improve the school system. It cannot be reasonably questioned that the views of the school personnel in all matters that improve the school system are desirable, important, and helpful. How best this can be conveyed to legislative bodies raises serious questions in view of the restrictions of the Condon-Wadlin Act.
It is the court’s view that the act in its present posture is too severe and restrictive and that the unreasonably restrictive aspects thereof be ameliorated to an extent at least sufficient to permit reasonable approved leaves of absence to specific individuals for the purposes set forth in the complaint. The court commends this view to the Legislature with the fervent hope that the members thereof will recall that at the time of the passage of the act, one of the main arguments made in its behalf by the proponents thereof was that those who were employed in the public service, having a public employer, might obtain improvements in their working conditions, compensation, etc., by availing themselves of their right to petition the Legislature and public officials, whereas it was at that time asserted that employees in private industry were limited to strike if mediation failed. In other words, it was claimed that there was no need for strikes by public employees in view of their right to petition, etc., for changes.
However, in view of the broadness of the restrictions imposed by the act, the right of petition relied upon may at times be so curtailed as to impair, if not destroy, its effectiveness. Though the pendulum has swung away from the one-time solicitude for civil servants, they should at the very least be permitted the right to present their grievances to the proper authorities in an effective manner without thereby forfeiting their positions and the tenure they would otherwise enjoy.
There remains for consideration plaintiffs’ request in their complaint that, if their attack upon the act should not be upheld, this court should declare which of the matters which plaintiffs *955 propose to take up with legislative bodies, officials and others would be prohibited by the act and which would not. In the court’s opinion, each and every one of said 14 matters would involve or relate to an attempt to bring about changes in the conditions of employment or compensation thereof. Some of them relate to salaries and the elimination or reduction of pension contributions. Others have a direct bearing upon (1) the safety of the plaintiffs’ working conditions, (2) the difficulties encountered by them because of (a) classes claimed to be too large, (b) the presence of uneducable students, (c) the use of obsolete books and equipment, (d) the promotion of students on the basis of age rather than their qualifications, (e) the lack of adequate time for preparation and of time to grant individual instruction to pupils, and (f) the use of teachers on nonteaching assignments, which adds to the burden on the other teachers, (3) provision for machinery to settle grievances and complaints together with collective bargaining, (4) legal protection for teachers against bodily harm at the hands of pupils. Two other phases remain which also relate to teachers’ working conditions, viz., the suggested increase of qualified personnel and the establishment of more open school days to permit more frequent parent-teacher contacts.
The court finds that the attacks upon the constitutionality of the Condon-Wadlin Act are without merit and further finds that the absence en masse for an unlimited period of time for each of the 14 purposes enumerated in the acts contemplated by plaintiffs would constitute a violation of the act. Had plaintiffs asserted the limited right, for a reasonable period, of certain representatives instead of the right, en masse, for an indefinite period, of the entire secondary school staff to absent itself for the stated purposes, it is clear that a denial of such limited request would be in conflict with the provisions of the act itself, for subdivision 1 thereof, in defining the word “ strike ”, contains certain safeguards guaranteeing the right of public employees to express views, grievances, opinions, etc., provided the expression of the same does not interfere with the full, faithful and proper performance of the duties of employment. Surely it cannot be held that the absence of a limited number of employees for a limited time in setting forth the views of the greater number they represent would interfere with the full and faithful performance of the duties of the limited number of absentees. Furthermore, without the safeguard guaranteeing the employees’ right to petition, it is extremely doubtful that the constitutionality of the act would have hitherto been upheld. However, in its present posture, the complaint is of such a nature, in the *956 light of the views herein expressed, as to warrant a dismissal thereof pursuant to rules 112 and 113 of the Rules of Civil Practice. Accordingly, defendant’s motion is granted to the extent of (1) dismissing the complaint as to the corporate plaintiff and the “ others similarly situated ” and (2) directing judgment for defendant, on the pleadings and under rule 113 of the Rules of Civil Practice, as requested. Insofar as dismissal of the complaint is sought on the ground that this is not a proper case for declaratory judgment, the motion is denied. The cross motion is granted only to the extent of declaring the plaintiffs’ rights as indicated in this opinion.
The foregoing constitutes the order of the court.
A word may not be amiss, at this juncture, about the desirability that the Condon-Wadlin Act be clarified as to some features, including its previously-discussed prohibition against any leave of absence to any employee to petition the Legislature during school hours. It is thought by some that at least one reason for the general reluctance of public officials to invoke the act is the severity of some of its provisions. An article on “ public employment ” in the Report of the New York State Joint Legislative Committee on Industrial and Labor Conditions for the year 1959-1960, states (p. 145): “ Failure to invoke the Law has destroyed its effectiveness as a deterrent to strikes. Public administrators feel that they cannot afford to invoke the penalties provided by the Act.” Leading newspaper editorials and many magazine articles have urged revision of the Condon-Wadlin Act (in order to encourage its use and also make it more fair and just to public employees) by easing its penalties and providing State machinery for giving the fullest and most considerate hearing to grievances of public employees.