Irving H. Saypol, J.
This opinion complements the accompanying decision which concludes the litigation arising out of the strike of the employees of the New York City Department of Welfare early this year. On New Year’s eve, the City of New York sued two labor unions and their officers representing Welfare Department employees, in representative and individual capacities. An injunction, pendente lite, issued, enjoining the strike then already in effect, on January 7, 1965. No opposing papers were ever submitted. In fact, no answers to the city’s suit were served until long thereafter. The defendants’ oral cross motion during the argument of the injunction motion to dismiss the complaint (CPLB. 3211, subd. [a], par. 7) was denied. (Minutes of hearing, Dec. 31,1964, pp. 8-13, N. Y. L. J., Jan. 19, 1965, p. 15, col. 5.) Some 5,000 striking employees, after seriously obstructing the department, returned to work after 30 days following a report of a committee called the Mayor’s Task Force, which had come into the picture with the support and concurrence of the strikers and their unions. This committee included a well-known militant labor partisan. In its report which brought about a return to work by the strikers, the task force described the strike literally as a tragedy for the families on relief, for the employees of the Welfare Department and for the city, “ a crisis that deeply affects the lives of more than half a million people in New York.” In the overall, its objective was to end'the strike — as a coincident the institution of an action by the strikers for “ a determination of the constitutionality of the new amendments to the act.” That act is the Condon-Wadlin Law, which is section 108 of the Civil Service Law. It condemns and prohibits strikes by public employees.
The same representatives and individuals who are the defendants in the city’s action then sued the city and brought on a motion for a permanent [sic] injunction in mid-February, 1965, to enjoin the enforcement of the penalty provisions of the Condon-Wadlin Act (Civil Service Law, § 108). In the order to show cause dated the 9th day of February, 1965, on consent of the parties, there was included a temporary restraint of enforcement for punishment of the strikers. On the return of the motion, the Attorney-General of New York, Hon. Louis J. Lefkowitz, intervened, pro se, in support of the law and the New York Civil Liberties Union was recognized amicus curies. It argues against constitutionality. Upon comparison of the complaint in this second case of the unions with the pleadings in the first case, including the belated verified answer of Local 371, it is apparent that the affirmative defenses in the answer *822 to the city’s case are the same, if not identical with the several separate causes of action in the strikers’ complaint. Accordingly, an order was signed and entered on the 18th day of February, 1965, which consolidates both actions, having the first Index No. 42511-1964.
The city and the Attorney-General, before answering in the unions’ action, move to dismiss the latter’s complaint for failure to state a cause of action (CPLB 3211, subd. [a], par. 7). The court treats the motion as one for summary judgment in the consolidated action (CPLB 3212), considering that there has been a joinder of issue.
Decision has been withheld, on the stipulation of the parties, because of related contempt proceedings for defying the injunctive order of January 7, 1965 (N.Y.L.J., Feb. 5, 1965, p. 16, col. 2; 23 A D 2d 55) and to avoid abrasive effect which might be harmful to negotiation of a labor agreement. Concurrently, the contempt proceedings are being withdrawn on the further stipulation of the parties, with the court’s approval.
The over-all thrust of the attack on section 108 of the Civil Service Laiv is that it is unconstitutional, the main objective a declaration of invalidity of the penalty provisions.
The intolerable outrage of the public employee turning on his Government has been so characterized by the executive, the legislative and judicial branches of the Government, Federal and State. Presidents Boosevelt and Truman, Governors Dewey and Bockefeller, Mayors La Guardia and Wagner have denounced it. Employees of the United States are prohibited by law from striking against the Government, conduct constituting a criminal felony comparable to advocacy of the overthrow of constitutional Government, and moreover violators and advocators are permanently barred from future employment (U. S. Code, tit. 5, § 118p, subd. [3]). The catchline of section 118p reads: ‘ ‘ Federal employment denied to persons who are disloyal or assert right to strike against Government ”.
Argument against the law’s constitutionality is specious reiteration. The opinion on the decision granting the temporary injunction collates the affirmed decisions in this court holding the law constitutional — Justice Yin cent A. Lupiano in the case of striking Transit Authority motormen (New York City Tr. Auth. v. Loos, 2 Misc 2d 733, affd. 3 A D 2d 740); Justice Jacob Mabkowitz in the case of striking school teachers (Pruzan v. Board of Educ. of City of N. Y., 25 Misc 2d 945, direct app. on constitutionality dsmd. 9 N Y 2d 680, judgment affd. 12 A D 2d 923, affd, 9 N Y 2d 911). The only word to be added is *823 the brief reference to Mr. Lewis’ striking miners when President Truman nationalized them at the end of the second World War. It was Mr. Truman’s forceful determination and steadfast adherence to maintenance of law in resisting Mr. Lewis and his mine workers that brought an abrupt halt to their disruptive strike. Resort by the Government to the Federal courts by action in equity resulted in an injunctive order which was ignored. The defiance resulted in the mandate of the Supreme Court of the United States (United States v. Mine Workers, 330 U. S. 258), fining Mr. Lewis $10,000 individually and his union $700,000 plus an additional conditional fine of $2,800,000 against the union upon failure within five days showing compliance with the court’s mandate (United States v. Mine Workers, supra, pp. 304-305).
In summary, section 108 of the Civil Service Law, as applied here is constitutional. There is no merit to the argument which seeks to distinguish between economic and organizational or recognitional strikes. There is no provision in law which accords to public employees rights of representation or collective bargaining. Directly, State Labor Relations Act (Labor Law, § 715, subd. [2]; § 721, subd. 3) excludes State and city employees from its application.
The other question presents a variety of grounds for asserted invalidity for unconstitutionality, Federal and State, of the special penalty provisions. Most of those have been presented and overruled in Loos (supra) and Pruzan (supra) as shown by the respective reporters’ summaries and headnotes and the briefs of parties.
Paraphrasing again the Supreme Court in Adler v. Board of Educ. (342 U. S. 485, 492), it is clear that these employees have the right, under our law, to assemble, speak, think and believe as they will (Communication Assn. v. Douds, 339 U. S. 382) but it is equally clear that they have no right to work for the City of New York in the Department of Welfare on their own terms (United Public Workers v. Mitchell, 330 U. S. 75).
The Condon-Wadlin Law, as originally enacted and in effect today, consists of six subdivisions, the first three respectively defining a strike, prohibiting a strike and prohibiting a consent to strike. Subdivision 4 provides for termination of employment of strikers qualified by conditional re-employment, in subdivision 5 — no immediate increase in compensation, none for the next three years and probationary tenure for the next five years. Subdivision 6,1 conclude to be the due process provision providing for a hearing that implies all the duly required con *824 stituents of a hearing, including notice, examination and confrontation under oath and a record. Moreover, a determination is subject to judicial review including whether or not there was discretion in any imposed penalty (CPLR 7803, subd. 3). Punishment is subject to judicial modification (Matter of Mitthauer, 8 N Y 2d 37, 42).
Because of arguments that the penalties were onerous and oppressive, for two years between April 23, 1963, and July 1, 1965 — applicable here, there was an experimental legislative amendment of the penalty provision in subdivisions 5 and added 7. The restriction on increase of compensation was reduced from three years to six months and the probationary period from five years to one year. The compensation restriction is significant because it suspends the operation of a schedule of automatic periodic increases. In addition, a new provision imposing a fixed penalty in the nature of a fine amounting to two days’ pay for each day of striking and moreover, additional punishment— removal, suspension without pay up to 60 days, an additional sanction — is authorized. Temporary subdivision 7 pertinently provides for certification to the paymaster within 24 hours and delivery of a copy of such notice by registered mail to the employee (L. 1963, ch. 702). The record here shows that such notices were issued, filed and served and that some 5,000 employees then demanded the hearings which the statute requires. These are the demanded hearings which have been temporarily restrained by the order to show cause. The messages of Governor Rockefeller in approving the two-year effective amendment by chapter 702 of the Laws of 1963 and his veto message No. 135-1965 regarding the bill to repeal the Condon-Wadlin Act are both revelatory of the utter need for the law and his support for continuation of the 1963 amendment.
There is no question of due process, slavery, involuntary servitude, excessive fines or punishment, no defect, no infirmity. In the final analysis this punishment, if forthcoming in individual cases, may be fixed only after the proffered and demanded hearing here which will be subject to judicial review. Those involved themselves fixed the penalty by staying out from their jobs. They remain free not to work; but they remain subject to discipline, up to dismissal. In the Federal employment there could be nothing else but dismissal and also criminal prosecution.
The city’s motion as one for summary judgment is granted on the law dismissing the defendants’ answers and defenses in the city’s action and dismissing the unions’ complaint in their action and the temporary restraint is vacated. The city’s motion to dismiss the unions’ complaint on the ground that they are not *825 aggrieved (cf. Matter of Suffolk County Retail Wine & Liq. Dealers [New York State Liq. Auth.], 23 A D 2d 552) is denied in view of the consolidation of the actions, the unions being named as defendants in the city’s action. The city’s action for injunction is mooted by the termination of the strike.